```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION
```

| | |
|---|---|
| LOVE TERMINAL PARTNERS, LP, et al., | § § § |
| Plaintiffs, | § § |
| AND | § Civil Action No. 3:06-CV-2089-D § |
| SMALL COMMUNITY AIRLINES, INC., | § § |
| Plaintiff-Intervenor, | § § § |
| VS. | § § |
| THE CITY OF DALLAS, TEXAS, et al., | § § § |
| Defendants. | § |

MEMORANDUM OPINION
AND ORDER

Plaintiffs and plaintiff-intervenor move to remand this removed action to state court. The question presented is whether intervenor's complaint states a claim that arises under federal law. Concluding that it does not, the court grants the motions and remands this case to state court.

I

This litigation arises in connection with the participation of elected officials from the City of Dallas in meetings in which various parties attempted to negotiate the terms for ending restrictions on flights to and from Dallas Love Field mandated under the terms of the so-called Wright Amendment. Plaintiffs Love Terminal Partners, LP and Virginia Aerospace, LLC alleged that

these negotiations culminated in a Joint Statement and Agreement that provide for a phased-in repeal of the Wright Amendment, but included other terms that are anti-competitive and injure plaintiffs and the public.  Plaintiffs filed suit in Texas state court seeking declaratory and injunctive relief based on allegations that defendants had violated the Texas Open Meetings Act, Tex. Gov't Code Ann. §§ 551.001-.146 (Vernon 1994) ("TOMA"), the City of Dallas Charter ("Charter"), and the Dallas City Council Rules of Procedure ("Rules").  They asked, *inter alia*, that the state court declare that defendants had violated TOMA and the Charter and Rules and that the Joint Statement and Agreement are void.  Plaintiff-intervenor Small Community Airlines, Inc. ("SCA") later intervened, asserting some of the same claims, although requesting somewhat different relief.  Congress has enacted the Wright Amendment Reform Act of 2006, Pub. L. No. 109-352, 120 Stat. 2001 ("Reform Act"), giving effect to key provisions of the Joint Statement and Agreement.

Defendants removed the case to this court based on SCA's intervention, contending that SCA had alleged in its original petition in intervention ("complaint")[1] federal question claims that for the first time made the case removable.  Plaintiffs and SCA now move on various grounds to remand the case and for an award

---

[1] For ease of reference, the court will use the federal term "complaint" rather than the Texas term "petition."

of attorney's fees and costs.

## II

### A

Although the parties dispute whether this case can be removed based on the claims contained in an intervenor's subsequent complaint rather than on what the plaintiff originally alleges in its complaint at the outset of the case, the court need not decide this question.[2] Assuming *arguendo* that the case is removable based on the claim that SCA asserted as intervenor after plaintiffs filed this case, the court holds that SCA's complaint does not state a claim that arises under federal law.

### B

"Ordinarily, the well-pleaded complaint rule governs federal question jurisdiction. Under the rule, '[r]emoval is not possible unless the plaintiff's "well pleaded complaint" raises issues of federal law sufficient to support federal question jurisdiction.'" *Ervin v. Stagecoach Moving & Storage, Inc.*, 2004 WL 1253401, at *2 (N.D. Tex. June 8, 2004) (Fitzwater, J.) (alteration in original) (quoting *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993)); *see Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) ("A determination that a cause of action presents a federal question depends upon the allegations of

---

[2]The court does address this issue indirectly in concluding below that the question is sufficiently in dispute that defendants' removal was not for this reason objectively unreasonable.

the plaintiff's well-pleaded complaint." (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908))). The well-pleaded complaint rule makes the plaintiff[3] "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Therefore, even if federal claims are available, the plaintiff may remain in state court by relying exclusively on state law. *See id.* If, on its face, the plaintiff's state court complaint contains no issue of federal law, there is no federal question jurisdiction. *Aaron v. Nat'l Union Fire Ins. Co.*, 876 F.2d 1157, 1160-61 (5th Cir. 1989). A federal claim does not exist simply because facts are available in the complaint to suggest such a claim. *See Gemcraft Homes, Inc. v. Sumurdy*, 688 F. Supp. 289, 292 (E.D. Tex. 1988); *Chavez v. McDonald's Corp.*, 1999 WL 814527, at *2 (N.D. Tex. Oct. 8, 1999) (Fitzwater, J.) (holding that plaintiff had not alleged a federal-law claim even though he referred at one point to exhausting his administrative remedies under federal law, where he otherwise clearly alleged that his claims were based on Texas statutory or common law). Nor is the existence of a federal defense enough to establish federal question jurisdiction. *See, e.g., Hart v. Bayer Corp.*, 199 F.3d 239, 244

---

[3]Although SCA is the intervenor rather than the plaintiff, the court will recount the controlling jurisprudence using the term "plaintiff," which is the party whose pleading is usually analyzed in the cases.

- 4 -

(5th Cir. 2000) ("Yet the mere fact that a given federal law might 'apply' or even provide a federal defense to a state-law cause of action, is insufficient alone to establish federal question jurisdiction.").

Moreover, "[b]ecause jurisdiction is so fundamental, any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Ins. Co.*, 810 F. Supp. 748, 750 (N.D. Tex. 1992) (Means, J.) (citing *Ashley v. Sw. Bell Tel. Co.*, 410 F. Supp. 1389, 1392 (W.D. Tex. 1976)).  "The federal removal statute, 28 U.S.C. § 1441 (1997), is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns."  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).

C

Defendants contend that SCA's petition raises federal claims because in ¶ 31 it seeks to declare invalid and enjoin conduct undertaken pursuant to the Reform Act.  They maintain that the claim arises under federal law because, to enter such a declaration and injunction, the court must invalidate or enjoin the Reform Act or determine that it does not compel defendants' conduct, i.e., the actions about which SCA complains.  They next cite ¶ 17, in which SCA alleges that the Reform Act does not require the elimination of

ground-level gates and asserts that the compromise and Reform Act are causing it irreparable harm.  Defendants maintain that SCA's declaratory and injunctive relief claims therefore arise under the Reform Act.  Finally, defendants posit that in ¶¶ 22, 28, 29, and 31 of SCA's complaint, it explicitly seeks relief based on violations of title 49 of the United States Code.  They cite SCA's allegations in ¶ 22 that the compromise is illegal and that defendants violated the law and public policy, including provisions of title 49 and related administrative regulations.  Defendants posit that SCA incorporated these allegations into its single cause of action, seeks a declaratory judgment based on them, and alleges that it is entitled to relief solely because these actions "were done in violation of law."  Ds. Br. 9 (citing SCA Compl. ¶ 31).  They maintain that, read fairly, this allegation includes both the federal- and state-law violations specifically alleged in the complaint and incorporated into the single count, and that SCA has asked for relief based on title 49.  Defendants argue that SCA's claim arises under federal law because it specifically seeks to enjoin them from taking action pursuant to federal law.  They conclude that the complaint alleges on its face violations of federal law and seeks redress for the alleged violations.[4]

---

[4] Defendants do not cite the Supreme Court's decision in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), to argue that this case was properly removed. Accordingly, the court need not address whether *Grable* impacts the removal question.

The court holds that SCA's complaint does not allege a claim that arises under federal law. The complaint asserts one count for relief. In ¶ 29 SCA explicitly states that it is seeking a declaratory judgment under Tex. Civ. Prac. & Rem. Code Ann. chapt. 37. It requests in ¶ 30 that the court declare that defendants have violated state or local law—TOMA, the Charter, and the Rules—and that the renovation plan for Dallas Love Field violates Tex. Bus. & Com. Code Ann. § 15.05, a provision of Texas antitrust law. In a somewhat parallel allegation, SCA also requests in ¶ 32 that the court declare that defendants have violated TOMA, the Charter, and the Rules, and that the Wright Amendment compromise and plans to implement it are void *ab initio*. There is no indication in § 32, however, that SCA seeks to invalidate the compromise or plans based on alleged violations of *federal* law. SCA also requests relief related to defendants' alleged TOMA violations (production of documents related to negotiating committee activities), *id.* at ¶¶ 33-34; injunctive relief to prevent defendants from taking any action in furtherance of the Joint Statement and Agreement or from engaging in renovative acts that would effectively prevent SCA from operating at Dallas Love Field, *id.* at ¶ 35; and an order requiring that defendants comply with TOMA, the Charter, the Rules, and Tex. Bus. & Com. Code § 15.05, *id.* at ¶ 36. Again, SCA does not predicate this relief on alleged violations of federal law, and the complaint indicates that

SCA is relying for relief on violations of state or local law.

Defendants contend that SCA's claim arises under federal law because in ¶ 31 SCA explicitly seeks to invalidate and enjoin conduct to be undertaken pursuant to "the legislation adopted by the United States Congress," i.e., the Reform Act.  SCA Compl. ¶ 31.  They also contend that the references in ¶ 31 to SCA's entitlement to relief based on actions "done in violation of law" are to federal- and state-law violations.  The court disagrees. Paragraph 31 follows immediately the allegations of ¶ 30 that assert violations of state and local law.  Paragraph 31 asserts that because "such actions"——that is, the ones that ¶ 30 alleges violate state and local law——"were done in violation of law," all plans to modify the physical structure of the Dallas Love Field terminal under the Wright Amendment compromise or the Reform Act must be declared void and unenforceable, and the City of Dallas and its agents and representatives must be enjoined from implementing any plans to alter or modify the Main Terminal.  In other words, SCA is alleging that because defendants violated state and local law, their plans concerning the Dallas Love Field terminal and actions to implement them must be voided and enjoined.[5]

Defendants also argue that the claim asserted in ¶ 31 arises

---

[5]Of course, even if the court assumed *arguendo* that the Reform Act provided defendants a federal-law defense to this claim, the existence of the defense would not make the case removable. *See Hart*, 199 F.3d at 244.

under federal law because, to enter such a declaration and injunction, the court must either invalidate or enjoin the Reform Act or determine that it does not compel defendants' conduct. They also cite ¶ 17, in which SCA alleges that the Reform Act does not require the elimination of ground-level gates, and they point to SCA's assertion that the compromise and Reform Act are causing it irreparable harm. Relying on *United Farm Bureau Mutual Insurance Co. v. Metropolitan Human Relations Commission*, 24 F.3d 1008 (7th Cir. 1994), they reason that SCA's claim arises under federal law.

Defendants' reliance on *United Farm Bureau* is misplaced. They seize on a single statement from that opinion to contend that the present case was removable because SCA did not simply mention federal law in its complaint but seeks to enjoin defendants from taking action pursuant to that federal law. Defendants extrapolate from this statement the principle that, if SCA's complaint implicates defendants' power to act under federal law—here, the Reform Act—by seeking to enjoin them from taking such actions, the claim arises under federal law. *United Farm Bureau* will not bear this reading.

In *United Farm Bureau* an insurance company filed suit in state court seeking to enjoin a federally certified local civil rights agency from investigating a person's complaint that the company had refused to renew his homeowner's insurance policy because he lived in a racially mixed neighborhood. *United Farm Bureau*, 24 F.3d at

- 9 -

1010-11. The agency removed the case based on federal question jurisdiction, asserting that the insurance company had alleged a federal question claim. *Id.* at 1010. On appeal, the insurance company challenged the removal, contending there was no federal question at issue and that its mention of the federal Fair Housing Act in its complaint was only an anticipated defense. *Id.* at 1012. The court of appeals upheld removal. Addressing the assertion that there was no federal question and that the insurance company's mention of the federal Fair Housing Act was simply an anticipated defense, the court pointed out that the complainant had lodged his complaint under a local ordinance and under the federal Fair Housing Act. The insurance company then went to state court explicitly "attempting to enjoin [the agency] from conducting an investigation of [the] complaint under state law *and* under the federal Fair Housing Act." *Id.* The insurance company had thus challenged the agency's jurisdiction under both state and federal law. Therefore, the "complaint [did] not simply 'mention' the federal Fair Housing Act, but rather directly implicate[d] [the agency's] power to act under the authority of the federal Fair Housing Act." *Id.* Consequently, the allegation was "not of such a limited nature as to be solely an anticipated defense." *Id.* Read in context, the statement that defendants cite from *United Farm Bureau*—that the complaint did not simply mention the federal Fair Housing Act, but rather directly implicated the agency's power

- 10 -

to act under the authority of the Act—addresses whether the insurance company's reference to federal law in its complaint pertained to an anticipated defense.  It does not stand for the proposition that a state-law claim arises under federal law merely because it seeks to enjoin a defendant from taking action pursuant to federal law.  In *United Farm Bureau* the insurance company relied on both state and federal law to challenge the agency's jurisdiction.

Although, as defendants point out, there are other paragraphs in SCA's complaint that refer to federal law, defendants do not show that SCA's cause of action arises under federal law. Paragraph 17, which is part of the "Background Facts" component of the complaint, refers to SCA's unsuccessful efforts to participate in the negotiations for resolving the Wright Amendment and, in SCA's view, to the injurious consequences of the compromise that was reached without SCA's involvement and of its interpretation and implementation.  Fairly read, these allegations reflect SCA's attempt to substantiate how defendants' alleged violations of state law and local law have injured SCA.

Nor is defendants' reliance on ¶¶ 22, 28, and 29 sufficient. Paragraphs 28 and 29 do not explicitly refer to federal law.  In ¶ 22, another of the "Background Facts" allegations of the complaint, SCA avers that the compromise is illegal and that defendants violated the law and public policy, including provisions

of title 49 and related administrative regulations. But SCA does not explicitly rely on these alleged federal-law illegalities to allege a claim against defendants. In requesting relief, SCA explicitly relies on state or local law alone. *See* SCA Compl. ¶¶ 29-37. This is insufficient to make the case removable. *See, e.g., MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) ("The plaintiffs' complaint alleges negligent and strict liability torts under Louisiana law. Its only reference to federal law is an allegation that the PPI facility was maintained in violation of federal regulations *as well as* in violation of state and local regulations. That, however, does not suffice to render the action one arising under federal law." (citing *Willy v. Coastal Corp.*, 855 F.2d 1160, 1169-71 (5th Cir. 1988))). Moreover, as noted, the court must resolve any doubt concerning removability against removal and in favor of remanding the case.

Accordingly, the court holds that SCA has not stated a claim against defendants that arises under federal law.

### III

Plaintiffs and SCA request an award of attorney's fees and costs. The court denies the requests.

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704, 711 (2005) (citing *Hornbuckle v. State Farm Lloyds*, 385 F. 3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)).  Under the circumstances presented here, there was an objectively reasonable basis for defendants to remove this action.  First, defendants have cited authorities that support their position that a case can be removed based on the claims contained in a complaint filed by an intervenor.  Second, as outlined above, SCA included in its complaint a sufficient number of references to violations of federal law and of the Reform Act that defendants did not act with objective unreasonableness in removing the case on the basis—albeit erroneous—that SCA had asserted a claim that arises under federal law.

* * *

Accordingly, SCA's November 29, 2006 motion to remand and plaintiffs' December 7, 2006 motion to remand are granted because this court lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c).  This action is remanded to the 101st Judicial District Court of Dallas County, Texas.  The clerk shall effect the remand in accordance with the usual procedure.

**SO ORDERED.**

January 25, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE